**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **THE CHAMBERLAIN GROUP, LLC**, | Civil Action No. _____ |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| **LEETRONICS CORPORATION and ELIRAN YADID**, | |
| Defendants. | |

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR
VIOLATION OF 15 U.S.C. §§ 1114 AND 1125(A) AND RELATED STATE CLAIMS**

Plaintiff The Chamberlain Group, LLC ("Chamberlain" or "Plaintiff") brings this Complaint against Defendants Leetronics Corporation ("Leetronics") and Eliran Yadid ("Yadid") (together, "the Defendants") for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) violation of the Illinois Uniform Deceptive Trade Practices Act; (4) and common law trademark infringement. These claims arise from Defendants' misappropriation of Chamberlain's trademarks in connection with Defendants' unlawful sale on the Internet of materially different and non-genuine products bearing Chamberlain's trademarks. In support of its complaint, Chamberlain alleges as follows:

**PARTIES**

1.     Chamberlain is a limited liability company, organized under the laws of Delaware, with a principal place of business in Oakbrook, Illinois.

2.     Leetronics, which is owned and operated by Yadid, is a corporation organized under the laws of New York, with its principal place of business located in Brooklyn, New York.

Leetronics and Yadid operate an online storefront on www.amazon.com ("Amazon") that is called "Fannys Gifts" (the "Fannys Gifts Storefront"), which is accessible at:

https://www.amazon.com//sp?seller=A1Q339Q3I0J2ZN.

3.      As explained more fully below, Chamberlain has become aware that Leetronics and Yadid are infringing upon Chamberlain's valuable and famous trademarks through their unauthorized, and almost certainly illicit, sale of Chamberlain's trademarked products through the Fannys Gifts Storefront. Chamberlain sent a cease and desist letter to Leetronics and Yadid dated September 1, 2023, instructing them to stop their unauthorized and harmful conduct, but that letter has been ignored. *See* Exhibit A (the "Cease and Desist Letter"). The Defendants' conduct in contravention of federal and state law continues unabated.

4.      The Defendants' failure to acknowledge, let alone comply with, Chamberlain's Cease And Desist Letter is not surprising. *The Defendants are serial trademark infringers, having lost at least four prior lawsuits accusing them of violating the federal Lanham Act, state trademark laws, and multiple state unfair competition laws.* For example, Judge Bucklo of the United States District Court for the Northern District of Illinois has entered a default judgment and permanent injunction against both Leetronics and Yadid enjoining them from continuing to engage in conduct that is legally indistinguishable from the conduct at issue in this lawsuit. *See Vetnique Labs LLC v. Leetronics Corp. et al.,* No. 1:22-cv-03304 (N.D. Illinois). At least three additional cases against these same Defendants have reached identical legal results with respect to the Defendants' ongoing involvement in the same sort of unauthorized and legally improper sales in violation of state and federal law. *See, e.g., Lutron Electronics, Inc. v. Leetronics Corp. et al.,* No. 5:23-cv-03318 (E.D. Pennsylvania); *Central Garden & Pet Company and Farnam Companies, Inc. v. Leetronics Corp.*

*et al.*, No. 3:23-cv-03157 (N.D. California); and *Ceva Animal Health, LLC v. Leetronics Corp. et al.*, No. 2:23-cv-02081 (D. Kansas).

## JURISDICTION AND VENUE

5.    Leetronics does business throughout the United States, including in Illinois, by virtue of its sales through the Fannys Gifts Storefront.

6.    Yadid is a natural person who, upon information and belief, resides at 2059 East 64th Street, Brooklyn, NY 11234 or 578 Mayfair Drive South, Brooklyn, NY 11234.  Chamberlain asserts claims against Yadid in his individual capacity and in his capacity as a corporate officer of Leetronics.  As reflected in publicly filed corporate records, Yadid is the chief executive officer of Leetronics.  On information and belief, Yadid personally controls the operations of the Fannys Gifts Storefront and, accordingly, also does business throughout the United States, including in Illinois.  Yadid is responsible for, authorizes, and directs the acquisition and sale of infringing products by Leetronics.  Accordingly, Yadid is personally liable for infringing activities conducted by Leetronics.  *See 4SEMO.com Inc. v. S. Illinois Storm Shelters*, 939 F.3d 905, 912 (7th Cir. 2019).  Indeed, on information and belief, Yadid is personally responsible for, authorizes, and directs the acquisition and sale of stolen Chamberlain trademarked products by Leetronics.

7.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338 (jurisdiction over Lanham Act claims and substantially related state law unfair competition claims), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Chamberlain's federal claims arise under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c).  Chamberlain's claims based upon the laws of Illinois are substantially related to its federal law claims.

8.     This Court has personal jurisdiction over Defendants because they have directed tortious activities toward the State of Illinois and established sufficient minimum contacts with Illinois by, among other things, advertising and selling substantial quantities of infringing products bearing Chamberlain's trademarks to consumers within Illinois.  This conduct is done knowingly, as Defendants are aware that Chamberlain is located in Illinois and is harmed in Illinois because of Defendants' conduct.  Defendants know that Chamberlain is located in Illinois, among other reasons, because they received the Cease and Desist Letter informing them that Chamberlain is located in Illinois and is harmed in Illinois by their unlawful actions.  *See* Exhibit A.

9.     In addition to having products shipped to Illinois consumers, on information and belief, Defendants also *warehouse* in Illinois some of the Chamberlain goods that Defendants sell. The Fannys Gifts Storefront notes that it uses Amazon to fulfill consumers' orders.



With at least 18 Amazon warehouses in Illinois alone, it is likely that Defendants maintain a stockpile of Chamberlain products within this state.

10.     In defiance of the Cease and Desist Letter, Defendants have continued their unauthorized sale of Chamberlain products, including, but not limited to, Chamberlain's myQ

Smart Garage Video Keypad. Such conduct has continued through the date of the filing of this Complaint. *See* Exhibit B (Screenshot from Fannys Gifts Storefront, dated October 27, 2023).

11. Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, or in the alternative because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A. Chamberlain's Business

12. Chamberlain develops, manufactures, and sells high-quality overhead garage door operators and accessories for residential and commercial use under the famous CHAMBERLAIN® and LIFTMASTER® brand names ("Chamberlain products"). One of Chamberlain's trademarked products is the myQ Smart Garage Video Keypad, which allows customers to remotely open and close their garage door from anywhere in the world and provides additional security features to customers, including a surveillance camera and motion detection technology. Chamberlain also sells remote control accessories that allow customers to operate overhead garage doors.

### 1. Chamberlain Controls the Sale of its Products Through Authorized Resellers.

13. Chamberlain strictly controls the distribution of Chamberlain products to the market to protect its goodwill and the value of its trademarks. Chamberlain thus sells its products only to entities that are expressly authorized by Chamberlain ("Authorized Resellers"), who in turn sell Chamberlain products to end-user customers.

14.     Chamberlain's quality controls begin with requiring that all outside sales of its products take place through Chamberlain's Authorized Resellers.  This basic step ensures that all of Chamberlain's authorized sales are subject to Chamberlain's quality control requirements.

15.     Chamberlain requires all Authorized Resellers to purchase Chamberlain products either directly through Chamberlain or from another Authorized Reseller.  This restriction is designed in part to prevent the sale of used or defective goods to consumers.

16.     Chamberlain also bars Authorized Resellers from selling Chamberlain products to any third party that is not an Authorized Reseller and that intends to resell the products.  Authorized Resellers may sell Chamberlain products only to end-user consumers or another Authorized Reseller.

17.     Chamberlain requires Authorized Resellers to abide by policies and other requirements relating to quality controls, customer service, and other sales practices.  Among other things, Chamberlain requires its Authorized Resellers to manage the return of Chamberlain products that have been bought by consumers but then returned to an Authorized Reseller in a particular fashion.  Authorized Resellers must forward returned products directly to Chamberlain unless the box containing the Chamberlain product is *perfectly* intact.  Products in opened packaging may not be placed back into stock and cannot be sold.  Likewise, Chamberlain forbids its Authorized Resellers from disposing of any returned products to entities such as consolidators who commonly purchase lots of returned goods from so-called "big box" retailers.  Among other things, these rules are crucial to further compliance with standards announced by the Federal Trade Commission.  Those standards require, among other things, that in many instances returned electronics must be labelled as "used" for purposes of any further resale.  *See Enforcement Policy*

*on Merchandise Which Has Been Subjected to Previous Use Trial Basis and Then Subsequently Resold as New,* 34 Fed. Reg. 178-77.

**2.** **Chamberlain's Limited Warranty Extends Only to Products Sold by Authorized Resellers.**

18. Chamberlain extends a limited warranty to the "first retail purchasers" of its products. The warranty for Chamberlain's myQ Video Keypad, for example, can be accessed at www.myq.com/warranty. In addition to protecting first retail purchasers against defects in materials or workmanship, the warranty also contains an important limitation as follows:

> **Because Seller cannot control the quality of products sold by unauthorized sellers, this limited warranty applies only to Products that were purchased from Seller or an authorized reseller in the United States or Canada, unless otherwise prohibited by law. Seller reserves the right to reject warranty claims from purchasers for Products purchased from unauthorized sellers, including unauthorized Internet sites.** [Emphasis in original.]

**B.** **Chamberlain's Trademarks**

19. Chamberlain spends hundreds of thousands of dollars and countless hours annually in promoting and protecting trademarked products. Among other things, by establishing its Authorized Resellers system, by controlling the distribution of returned products, and by creating its warranty policies, Chamberlain endeavors to ensure that its trademarked products sold in the United States meet its quality standards and enhance the company's reputation.

20. Chamberlain has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: CHAMBERLAIN® (U.S. Trademark Reg. Nos. 5064560, 2709642; 2721677), myQ® (U.S. Trademark Reg. No. 7043691), SMART GARAGE® (U.S. Trademark Reg. No. 6688354), SECURE VIEW® (U.S. Trademark Reg. No. 6809699) and

LIFTMASTER ELITE SERIES® (U.S. Trademark Reg. No. 6335302) (collectively, the "Chamberlain Trademarks").

21.     The registration for each of the Chamberlain Trademarks is valid and in full force and effect.

22.     Chamberlain's right to use the Chamberlain Trademarks is incontestable under 15 U.S.C. § 1065.  Various of the Chamberlain Trademarks have been in continuous use for over five years and Chamberlain timely filed a Section 15 Declaration for those Trademarks.  Chamberlain has exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of products bearing the marks identified in the registrations, as provided by 15 U.S.C. § 1115(b).

23.     The Chamberlain Trademarks are widely recognized as being associated with high-quality overhead garage door opener products and accessories.

## C.     Leetronics and the Fannys Gifts Storefront

24.     Chamberlain discovered that Defendants were and are selling products bearing the Chamberlain Trademarks on Amazon through a storefront called "Fannys Gifts."

25.     Chamberlain thereafter identified Defendants as the operators of the Fannys Gifts Storefront and the parties who are responsible for the unlawful sale of products bearing the Chamberlain Trademarks through the Fannys Gifts Storefront.  On information and belief, "Fanny" is the name of Defendant Yadid's mother.

26.     Defendants are not Authorized Resellers of Chamberlain products and are not subject to, and do not comply with, the standards that Chamberlain imposes on its Authorized Resellers.  Nor are Defendants authorized to act on behalf of any Authorized Reseller.

27.     Set forth below is a partial screen print of the Fannys Gifts Storefront page:



28.     As reflected in the screen capture in Paragraph 27 above, Leetronics and Yadid prominently and falsely proclaim that they offer "CHAMBERLAIN" branded products as one of their lines of product offerings.

29.     Clicking through on the hyperlink represented by the word "CHAMBERLAIN" brings the user to a page within the Fannys Goods Storefront offering (as of October 27, 2023) at least five different Chamberlain products, including the myQ Video Keypad.  *See* screen shot below and Exhibit C.



**D.**     **The Defendants' Acts of Trademark Infringement and Unfair Competition**

      **1.**     **Deceptive Sales of Used Chamberlain Goods as New**

    30.    Defendants routinely sell *used* goods without disclosing that they are used. Attached as Exhibit D, for example, are true and accurate copies of screen shots showing customer complaints about a miscellany of used products deceptively sold by Defendants as new.

    31.    More particularly, set forth below are screen captures of complaints from Amazon customers who have ordered *Chamberlain trademarked* products from the Fannys Gifts Storefront only to receive a product that obviously had been used by a predecessor buyer. Some complaints refer to Chamberlain trademarks by name; in other instances, the product descriptions leave no doubt that the consumer complaint—available to any of the millions of users of Amazon.com— refers to a Chamberlain trademarked product. (All screen captures were taken on October 27, 2023.)







## 2. <u>Sale of Products Not Covered by Chamberlain's Warranties</u>

32.     The illicit actions of the Defendants do not end with the deceptive sale by Defendants of used Chamberlain products as new.

33.     Because any product sold by an unauthorized reseller is not subject to Chamberlain's quality controls and Chamberlain cannot ensure the quality of such products, the Chamberlain Warranties do not cover Chamberlain products sold by unauthorized resellers such as Defendants.

34.     The Chamberlain Warranties are a material component of genuine Chamberlain products.   Consumers considering whether to purchase Chamberlain products would find it relevant to their purchasing decision to know whether the product they are purchasing is covered

11

by the Chamberlain Warranties. Consumers who purchase Chamberlain products from an Authorized Reseller covered by the Chamberlain Warranties receive assurances that they are receiving a high-quality product, that Chamberlain stands behind the product, and that if a defect occurs, they can get a product repair or replacement.

35.     The sale of Chamberlain Products by the Defendants is not authorized by Chamberlain. To the contrary, the sales have continued despite Chamberlain's express direction to the Defendants that the sales constitute ongoing violations of the Lanham Act and must be discontinued.

36.     As set forth above, genuine Chamberlain products purchased from an Authorized Reseller come with the Chamberlain Warranties. Chamberlain, however, does not extend the Chamberlain Warranties to products purchased from non-Authorized Resellers (such as Defendants) because Chamberlain cannot ensure the quality of products sold by sellers that are not subject to its quality controls.

37.     Because Defendants are not Authorized Resellers and thus are not subject to Chamberlain's quality control requirements, the products bearing the Chamberlain Trademarks that Defendants sell do not come with the Chamberlain Warranties.

38.     Because the products Defendants sell do not come with the Chamberlain Warranties, they are materially different from genuine Chamberlain products and are not, in fact, genuine Chamberlain products.

39.     Defendants' unauthorized sale of non-genuine products bearing the Chamberlain Trademarks is likely to, and does, create customer confusion because customers who purchase

products from Defendants believe they are purchasing genuine Chamberlain Products that are covered by the Chamberlain Warranties when, in fact, they products are not covered.

40.     The unauthorized sale of Chamberlain products in these circumstances violates the Lanham Act.  *See* 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

**3.      The Cease and Desist Letter**

41.     On September 1, 2023, counsel for Chamberlain sent a cease-and-desist letter to Yadid and Leetronics via United Parcel Service ("UPS") delivery.  *See* Ex. A.  The letter explained that Defendants are infringing the Chamberlain Trademarks by selling products through the Fannys Gifts Storefront that are materially different from genuine products sold by Chamberlain's Authorized Resellers because the products sold by Defendants are not covered by Chamberlain's Warranties.  Further, the letter apprised the Defendants that the products they were selling may be stolen.

42.     As of the time of filing of this Complaint, Defendants have not responded in any fashion to the Cease and Desist letter.  To the contrary, Defendants wrongfully and without abatement continue to advertise and sell products bearing the Chamberlain Trademarks through the Fannys Gifts Storefront.  Defendants' disregard of Chamberlain's Cease and Desist letter demonstrates that they are acting intentionally, willfully, and maliciously.

43.     As noted above, Defendants are serial violators of the federal Lanham Act, its state counterparts, and multiple state unfair competition laws.  The Defendants have been sued by several companies for legally indistinguishable conduct relating to the sale of infringing trademarked products through the Fannys Gifts Storefront.  Defendants have failed to appear or answer those allegations and thus have defaulted in each of those other actions against them.  *See,*

*e.g., Lutron Electronics, Inc. v. Leetronics Corp. et al.*, No. 5:23-cv-03318 (E.D. Pennsylvania); *Vetnique Labs LLC v. Leetronics Corp. et al.,* No. 1:22-cv-03304 (N.D. Illinois); *Central Garden & Pet Company and Farnam Companies, Inc. v. Leetronics Corp. et al.,* No. 3:23-cv-03157 (N.D. California); *Ceva Animal Health, LLC v. Leetronics Corp. et al.*, No. 2:23-cv-02081 (D. Kansas).

**E.**    **Chamberlain Has Suffered Substantial Harm as a Result of Defendants' Conduct**

44.    Chamberlain has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

45.    Chamberlain is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell materially different products bearing the Chamberlain Trademarks, causing continued irreparable harm to Chamberlain's reputation, goodwill, relationships, intellectual property, and brand integrity.

46.    Additionally, Chamberlain is entitled to injunctive relief requiring Defendants to return or destroy infringing products because without that remedy, Defendants may evade injunctive relief by transferring their infringing products to another reseller.

47.    Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

48.    Defendants' willful violations of the Chamberlain Trademarks and continued pattern of misconduct demonstrate intent to harm Chamberlain.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)(A)

49.     Chamberlain incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

50.     Chamberlain is the owner of the Chamberlain Trademarks.

51.     Chamberlain has registered the Chamberlain Trademarks with the United States Patent and Trademark Office.

52.     The Chamberlain Trademarks are valid and subsisting trademarks in full force and effect.

53.     Defendants willfully and knowingly used, and continue to use, the Chamberlain Trademarks in interstate commerce for purposes of selling non-genuine products bearing the Chamberlain Trademarks on the Internet without Chamberlain's consent.

54.     The products Defendants sell bearing the Chamberlain Trademarks are not authorized for sale by Chamberlain.

55.     Defendants' use of the Chamberlain Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Chamberlain Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Chamberlain when they are not.

56.     Defendants' use of the Chamberlain Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine Chamberlain products.

57. The products sold by Defendants are not, in fact, genuine Chamberlain products. The products sold by Defendants are not genuine Chamberlain products and are materially different from genuine Chamberlain products because, among other reasons, they are ineligible for the Chamberlain Warranty, they are not subject to, do not abide by, and interfere with Chamberlain's quality control requirements that Authorized Resellers must follow, and do not come with the customer service benefits of genuine Chamberlain products.

58. Defendants' unauthorized sale of materially different products bearing the Chamberlain Trademarks interferes with Chamberlain's ability to exercise quality control over products bearing its Chamberlain Trademarks because Chamberlain cannot audit Defendants to confirm that they are complying with Chamberlain's quality controls and close their account if they fail to comply.

59. Defendants' unauthorized use of the Chamberlain Trademarks has materially damaged the value of the Chamberlain Trademarks, caused significant damage to Chamberlain's reputation and business relations, and infringed on the Chamberlain Trademarks.

60. As a proximate result of Defendants' infringement, Chamberlain has suffered and continues to suffer damage to its business, goodwill, reputation, and profits, in an amount to be proven at trial.

61. Chamberlain is entitled to recover its damages caused by Defendants' infringement of its Chamberlain Trademarks and disgorge Defendants' profits from its willful infringement and unjust enrichment.

62.     Chamberlain is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Chamberlain will suffer irreparable harm.

63.     Chamberlain is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Chamberlain Trademarks.

**SECOND CAUSE OF ACTION**
**Unfair Competition – 15 U.S.C. § 1125(a)**

64.     Chamberlain incorporates the allegations set forth in Paragraphs 1-48 as if fully set forth herein.

65.     Chamberlain is the owner of the Chamberlain Trademarks.

66.     Chamberlain has registered the Chamberlain Trademarks with the United States Patent and Trademark Office.

67.     The Chamberlain Trademarks are valid and subsisting trademarks in full force and effect.

68.     Defendants have willfully and knowingly used, and continue to use, the Chamberlain Trademarks in interstate commerce for purposes of selling and advertising materially different products bearing the Chamberlain Trademarks without Chamberlain's consent.

69.     The products bearing the Chamberlain Trademarks that Defendants advertise and sell are not genuine Chamberlain products and are materially different from genuine Chamberlain products because they are not eligible for the Chamberlain Warranty, are not subject to, interfere with, and do not abide by Chamberlain's quality control requirements that Authorized Resellers must follow, and do not come with the customer service benefits of genuine Chamberlain products.

Moreover, as noted above, the Defendants sell used Chamberlain trademarked products as new, thus deceiving customers and tarnishing Chamberlain' valuable reputation.

70.     Defendants' unauthorized advertisement and sale of materially different products bearing the Chamberlain Trademarks interferes with Chamberlain's ability to exercise quality control over products bearing the Chamberlain Trademarks because Chamberlain is unable to audit Defendants to confirm that they are complying with Chamberlain's quality control requirements and close their account if they fail to comply with Chamberlain's quality control requirements.

71.     Defendants' unauthorized sales of materially different products bearing Chamberlain Trademarks are likely to cause confusion, cause mistake, or deceive consumers because they suggest that the products Defendants sell are genuine Chamberlain products that come with the Chamberlain Warranty and are subject to Chamberlain's quality controls when they are not.

72.     Defendants' unauthorized sales of materially different products bearing Chamberlain Trademarks are likely to cause confusion, cause mistake, or deceive consumers because they suggest that the products Defendants sell are sponsored or authorized by Chamberlain when they are not.

73.     Defendants' unauthorized sale of materially different products bearing Chamberlain Trademarks and use of Chamberlain Trademarks in advertising infringes on the Chamberlain Trademarks.

74.     Defendants' unauthorized sale of materially different products (including *used* products) bearing Chamberlain Trademarks and unauthorized use of Chamberlain Trademarks in

advertising have materially damaged the value of the Chamberlain Trademarks and caused significant damage to Chamberlain's business relations.

75.     As a proximate result of Defendants' actions, Chamberlain has and will continue to suffer damage to its business, goodwill, reputation, and profits, in an amount to be proven at trial.

76.     Chamberlain is entitled to recover its damages caused by Defendants' infringement of its Chamberlain Trademarks and disgorge Defendants' profits from its willful infringement and unjust enrichment.

77.     Chamberlain is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' actions, and unless Defendants are permanently enjoined, Chamberlain will suffer irreparable harm.

78.     Chamberlain is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith engaged in unfair competition.

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS 510/1 – 510/7**

79.     Chamberlain hereby incorporates the allegations contained in Paragraphs 1-48 as if fully set forth herein.

80.     Chamberlain is the owner of the Chamberlain Trademarks.

81.     Chamberlain has registered the Chamberlain Trademarks with the United States Patent and Trademark Office.

82.     The Chamberlain Trademarks are valid and subsisting trademarks in full force and effect.

83.     Defendants willfully and knowingly used, and continue to use, the Chamberlain Trademarks in commerce for the purpose of selling and advertising non-genuine products bearing the Chamberlain Trademarks without the consent of Chamberlain.

84.     The products bearing the Chamberlain Trademarks that Defendants advertise and sell are not genuine Chamberlain products because the products are not authorized for sale by Chamberlain, are not eligible for the Chamberlain Warranty, are not subject to Chamberlain's quality controls, do not come with the customer service benefits of genuine Chamberlain products, and are materially different from genuine Chamberlain products.

85.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Chamberlain Trademarks, especially used products, interferes with Chamberlain's quality controls and its ability to exercise quality control over products bearing the Chamberlain Trademarks.

86.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Chamberlain Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Chamberlain Trademarks suggests that the products Defendants offer for sale are covered by the Chamberlain Warranty and are subject to, and abide by, Chamberlain's quality controls when, in fact, they do not.

87.     Defendants' unauthorized advertisement and sale of non-genuine products bearing the Chamberlain Trademarks, especially used products, is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Chamberlain Trademarks suggests that the products Defendants offer for sale are genuine Chamberlain products when, in fact, they are not.

88.    Defendants' unauthorized advertisement and sale of non-genuine products bearing the Chamberlain Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the Chamberlain Trademarks suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Chamberlain when, in fact, they are not.

89.    Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce them to believe that Defendants' products are genuine Chamberlain products when, in fact, they are not.

90.    Defendants' unauthorized sale of products bearing the Chamberlain Trademarks and unauthorized use of the Chamberlain Trademarks in advertising infringes the Chamberlain Trademarks and constitutes a deceptive trade practice under 815 ILCS 510/2.

91.    Defendants' unauthorized use of the Chamberlain Trademarks has materially damaged the value of the Chamberlain Trademarks, especially with respect to used products that are passed off as new, caused significant damage to Chamberlain's business relations, and infringed the Chamberlain Trademarks.

92.    As a proximate result, Chamberlain has suffered, and continues to suffer, immediate and irreparable harm.  Chamberlain has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

93.    Chamberlain is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

94.     Pursuant to 815 ILCS 510/3, Chamberlain is entitled to an injunction enjoining Defendants' unlawful conduct, and an award of attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### Common Law Trademark Infringement

95.     Chamberlain hereby incorporates the allegations contained in Paragraphs 1-48 as if fully set forth herein.

96.     Chamberlain is the owner of the Chamberlain Trademarks.

97.     Chamberlain has registered the Chamberlain Trademarks with the United States Patent and Trademark Office.

98.     The Chamberlain Trademarks are valid and subsisting trademarks in full force and effect.

99.     Defendants willfully and knowingly used, and continue to use, the Chamberlain Trademarks in interstate commerce, including in their product listings on Amazon, to advertise, promote, and sell non-genuine products bearing the Chamberlain Trademarks without Chamberlain's consent.

100.    Defendants' advertisements and promotions of products unlawfully using the Chamberlain Trademarks have been disseminated to the relevant purchasing public.

101.    The products that the Defendants advertise and sell are not genuine Chamberlain products because the products are not authorized for sale by Chamberlain, are not eligible for the Chamberlain Warranty, are not subject to Chamberlain's quality controls, and are materially different from genuine Chamberlain products.  Defendants deceptively sell used Chamberlain products as new and, on information and belief, in some instances may be selling stolen goods.

102.    Defendants' unauthorized advertisements, promotions, and sales of products bearing the Chamberlain Trademarks interfere with Chamberlain's ability to exercise quality control over products bearing the Chamberlain Trademarks because Chamberlain is unable to audit Defendants to confirm they are complying with Chamberlain's quality control requirements and close their accounts if they fail to comply with Chamberlain's quality control requirements.

103.    The products Defendants advertise and sell are materially different from genuine Chamberlain products because they are not subject to, and interfere with, Chamberlain's quality controls.

104.    The products Defendants advertise, promote, and sell are materially different from genuine Chamberlain products because they do not come with the customer service benefits that accompany genuine Chamberlain products.

105.    Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of the products Defendants offer for sale passes off goods that are not genuine Chamberlain products as if they were genuine Chamberlain products.

106.    Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Chamberlain Trademarks causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' products because it suggests that the products are sponsored, approved, and certified by Chamberlain when, in fact, they are not.

107.    Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Chamberlain Trademarks causes likelihood of confusion or misunderstanding as to Defendants' products because it suggests

that the products Defendants offer for sale are genuine and authentic Chamberlain products when, in fact, they are not.

108. Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Chamberlain Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products Defendants sell are subject to Chamberlain's quality control requirements when, in fact, they are not.

109. Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Chamberlain Trademarks misrepresents the sponsorship, approval, characteristics, uses, or benefits of Defendants' products because it suggests that the products Defendants offer for sale come with the customer service benefits that accompany genuine Chamberlain products when, in fact, they do not.

110. Defendants' use of the Chamberlain Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Chamberlain Trademarks misrepresents the sponsorship, approval, status, affiliation, or connection of Defendants' products because it suggests that the products Defendants offer for sale are sponsored by, approved by, authorized by, or otherwise connected with Chamberlain when, in fact, they are not.

111. As a proximate result of Defendants' unlawful actions, Chamberlain has suffered, and continues to suffer, irreparable harm. Chamberlain also has and continues to suffer damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

112.    Chamberlain is entitled to recover its damages caused by Defendants' infringement of the Chamberlain Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

113.    Chamberlain is also entitled to punitive damages because Defendants' conduct was malicious, wanton, willful, and oppressive toward Chamberlain, or exhibited a reckless indifference to the rights of Chamberlain.

## PRAYER FOR RELIEF

WHEREFORE, Chamberlain prays for relief and judgment as follows:

A.    Judgment in favor of Chamberlain and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the Chamberlain Trademarks;

ii)     Prohibiting the Enjoined Parties from using any of the Chamberlain Trademarks in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising,

promoting, or displaying any and all products bearing any of the Chamberlain Trademarks;

iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Chamberlain Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Chamberlain's products, or any of the Chamberlain Trademarks;

vi)    Requiring the Enjoined Parties to take all action, including, but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the Chamberlain Trademarks which associate Chamberlain's products or the Chamberlain Trademarks with the Enjoined Parties or the Enjoined Parties' websites;

vii)    Requiring the Enjoined Parties to take all action to remove the Chamberlain Trademarks from the Internet, including from the website www.amazon.com; and

viii)    Requiring the Enjoined Parties to destroy or return to Chamberlain all products bearing the Chamberlain Trademarks in their possession, custody, or control.

26

C. An award of attorneys' fees, costs, and expenses. This matter presents proper circumstances for the award of such fees including the Defendants' willful decision to ignore the Cease and Desist letter and their history of losses in other, legally indistinguishable lawsuits.

D. Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Chamberlain demands a trial by jury on all issues so triable.

Dated: October 30, 2023                    JONES DAY

By: */s/ William F. Dolan*
    William F. Dolan
    wdolan@jonesday.com
    110 North Wacker Drive
    Suite 4800
    Chicago, IL  60606
    Telephone:     +1.312.782.3939
    Facsimile:     +1.312.782.8585

    Counsel for The Chamberlain Group, LLC